IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| SYED Y. ARIF, | * | |
| | * | |
| **Plaintiff** | * | |
| | * | Civ. No.: MJM-24-1057 |
| v. | * | |
| | * | |
| MARYLAND DEPARTMENT OF | * | |
| STATE POLICE, *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

This matter is before the Court on the Maryland Department of State Police ("MDSP"), Sgt. Mark J. Donisi, Sgt. Anthony Hall, Gary L. Bachtell, and Robert B. Tanner's (collectively, "Defendants") Motion to Dismiss, or in the alternative, Motion for Summary Judgment. ECF 11. The motion is fully briefed and ripe for disposition. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For reasons explained below, Defendants' motion shall be granted in part and denied in part.

I.  **FACTUAL BACKGROUND**

The following facts are drawn from allegations in the Amended Complaint filed by plaintiff Syed Arif ("Plaintiff"). ECF 10 (Am. Compl.).

Plaintiff is an Asian man with brown-colored skin born in Pakistan, is a practicing Muslim, and is a naturalized citizen of the United States and resident of Maryland. Am. Compl. ¶¶ 4, 10.

1

In September 2018, Plaintiff applied for a position as Director of the Quartermaster Division of MDSP. *Id.* ¶ 16. Plaintiff was interviewed for the position on October 29, 2018, and two days later, was extended a conditional offer of employment, which he accepted. *Id.* ¶¶ 21, 22. One of the conditions of his employment, and the only condition at issue here, was that he pass a polygraph examination. *Id.* ¶ 23.

Plaintiff reported for his polygraph examination on November 16, 2018. *Id.* ¶ 29. The polygraph test was administered by Sgt. Mark Donisi. *Id.* ¶ 30. After first asking Plaintiff questions about drug use, Sgt. Donisi paused the examination for a period of time. He had Plaintiff wait in the lobby while he reviewed and scored this portion of the exam and forwarded the charts to Polygraph Unit Director Gary Bachtell. *Id.* ¶ 31. While waiting in the lobby, Plaintiff witnessed Sgt. Donisi observing him from the doorway. *Id.* ¶ 32. Sgt. Donisi asked Plaintiff what he was doing on his phone, to which he responded that he was playing a game. *Id*. After this exchange, the break ended, and Sgt. Donisi questioned Plaintiff about major crimes, theft, domestic violence, and sex crimes. *Id*. ¶ 33. Sgt. Donisi reviewed and scored the results during another pause in the exam. *Id*. ¶ 34.

Although the results indicated "no significant reactions" and a low probability of deception, Sgt. Donisi told Plaintiff that the results indicated deception and asked Plaintiff if he had committed any crimes listed in the polygraph booklet, which Plaintiff denied. Plaintiff further denied attempting any deception. *Id*. ¶¶ 34, 35. Sgt. Donisi later told Plaintiff that he passed portions of the exam but that his results were "all over the place" for the sex crimes portion, which was not true. *Id*. ¶ 36.

Sgt. Donisi re-administered the sex crimes portion of the exam, paused to review the charts, and then emailed the charts to Mr. Bachtell, claiming that Plaintiff's respiration was "all over the

place." *Id*. ¶¶ 37, 38. Mr. Bachtell forwarded the email and charts to Sgt. Anthony Hall for further review. *Id*. ¶ 38.

While waiting in his car for the results, Plaintiff noticed Sgt. Donisi covertly observing him again, and Sgt. Donisi then asked Plaintiff to return to the building to discuss the results. *Id*. ¶ 39. Sgt. Donisi told Plaintiff that his results indicated deception and accused Plaintiff of "hiding information," which Plaintiff denied. *Id*. ¶ 40. Sgt. Donisi then asked questions Plaintiff found "deeply offensive," including whether Plaintiff had sex with his sister or with a dog, which Plaintiff denied. *Id*. ¶ 41.

Sgt. Donisi prepared a report of the polygraph results, indicating falsely that a result of the first test was "Significant Response – Sexual Crimes (Additional Testing Necessary)" and that the results of the follow-up test indicated deception. *Id*. ¶ 42. In truth, according to the Amended Complaint, the results of Plaintiff's initial test was "No Significant Reactions" with a low probability of deception. *Id*. ¶¶ 34, 42.

Plaintiff reported back to MDSP to take a second polygraph examination on November 28, 2018. *Id*. ¶ 43. Sgt. Hall administered this second exam while exchanging text messages with Sgt. Donisi about Plaintiff. Sgt. Hall stated via text message to Sgt. Donisi that Plaintiff's results were "close to inc[onclusive]," to which Sgt. Donisi replied, "He's hiding something on his culture sex w[ith] juveniles is permissible." *Id*. ¶¶ 44, 45. Plaintiff's results indicated a low probability of deception, but Sgt. Hall accused Plaintiff "countermeasures" to subvert the test results, including abnormal or deep breathing before answering each question, which Plaintiff denied. *Id*. ¶ 46.

In his report on the second exam, Sgt. Hall indicated "no opinion" as to the result and noted that Plaintiff's breathing was "a-typical." *Id*. ¶ 47. Sgt. Hall emailed the charts to Mr. Bachtell, stating that he "did not like" Plaintiff's respirations but that Plaintiff "denied countermeasures."

3

*Id*. ¶ 48. When Mr. Bachtell forwarded the results to another officer for review, the officer responded that he had "no opinion" but opined that Plaintiff's respiratory rates looked "too good to be true." *Id*. ¶ 48. Mr. Bachtell and Sgt. Hall concluded that Plaintiff's results were "inconclusive," but Plaintiff alleges that this conclusion was incorrect and "based on prejudiced suspicions" rather than actual data from the testing. *Id*. ¶¶ 49, 50. Throughout the entire process, Plaintiff denied being untruthful and denied using any countermeasures. *Id*. ¶¶ 35, 40, 41, 46, 51.

Sgt. Hall and Sgt. Donisi continued to exchange text messages about Plaintiff, with Sgt. Donisi stating in one message, "there is something with him and I believe it's cultural." *Id*. ¶ 55. In another message, Sgt. Donisi wrote that he "read about the culture and region where [Plaintiff] was born" and that "[m]olestation, rape, child abduction are common place." *Id*. Sgt. Donisi further wrote, "He may have been a victim or watch??? Don't know." *Id.* MDSP disciplined Sgt. Donisi and Sgt. Hall for their text messages about Plaintiff. *Id*. ¶ 62.

Plaintiff emailed Lt. Kimberly Smith, Personnel Administration Section Commander, expressing continued interest in the position and "bewilderment at the supposed 'inconclusive' results and the repeated [polygraph] testing." *Id*. ¶ 52. Lt. Smith forwarded the email to Lt. Col. Dalaine Brady, head of MDSP's Support Services Bureau, expressing that Plaintiff was "our #1 candidate for the position," asking whether Plaintiff could be hired, and stating that she did not know what impact the "inconclusive" polygraph result would have on hiring. *Id*. ¶ 53. Lt. Col. Brady forwarded Lt. Smith's email to Human Resources ("HR") Administrator R. Bruce Tanner. *Id*.

Mr. Tanner ultimately rescinded Plaintiff's conditional job offer. *Id*. ¶ 56. He stated in a letter to Plaintiff, "Based upon a review of your application and other background information, it has been determined that all terms and conditions were not met." *Id*. When Plaintiff asked "what

4

terms and conditions were not met," Mr. Tanner responded that Plaintiff was required to pass all components of a polygraph examination "to the satisfaction of [MDSP.]" *Id*. ¶¶ 57, 58. Plaintiff alleges that he did in fact pass the polygraph exam "but was not selected for the position because of what Sgt. Donisi referred to as [Plaintiff's] 'culture[,]'" meaning his face, skin color, religion, and national origin. *Id*. ¶ 59. The Director position remained open until July 2019, when MDSP hired "an American, Caucasian, non-Muslim male" to fill the position. *Id*. ¶¶ 60, 61.

On January 22, 2019, Plaintiff applied for the position of Digital Forensic Examiner at MDSP, and a few days later, Mr. Tanner informed Plaintiff that, due to his performance on the previous polygraph examinations, he did not qualify for the position. *Id*. ¶¶ 63, 65. Plaintiff alleges that he "was more than qualified for the position," *id*. ¶ 64, but he was not selected based on his race, skin color, religion, and national origin, *id*. ¶ 66. The position was later filled by "an applicant who was not Asian, brown, Muslim, or Pakistani." *Id*. ¶ 67.

## II.    PROCEDURAL HISTORY

On April 10, 2024, Plaintiff commenced this civil action against MDSP, Sgt. Donisi, Sgt. Hall, Mr. Bachtell, and Mr. Tanner alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII") and the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't, § 20-601, *et seq*. ("MFEPA"). ECF 1. All individual Defendants are sued in their official capacities. On June 27, 2024, Defendants' filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. ECF 6. Plaintiff filed an Amended Complaint on July 11, 2024. ECF 10.

The Amended Complaint contains 16 counts: eight counts under Title VII, and eight corresponding MFEPA counts. Counts I, III, V, and VII allege discrimination based on race, color, religion, and national origin, respectively, for MDSP's failure to hire Plaintiff for the

Quartermaster Director position to which he applied in 2018. Counts II, IV, VI, and VIII allege discrimination based on race, color, religion, and national origin, respectively, for MDSP's failure to hire Plaintiff for the Forensic Examiner position to which he applied in 2019. Counts IX through XVI are the corresponding MFEPA claims.

On July 11, 2024, Defendants filed another Motion to Dismiss, or in the alternative, Motion for Summary Judgment. ECF 11. On September 10, 2024, Plaintiff filed a response in opposition to Defendants' motion. ECF 15. On September 9, 2024, Defendants filed a reply in support of their motion. ECF 18.

### III.   STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may file a motion to dismiss a complaint for failure to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted).

Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). The "well pled facts in the complaint" must be "viewed in the light most favorable to the plaintiff." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

A court may consider documents "explicitly incorporated into the complaint by reference," "those attached to the complaint as exhibits," and "document[s] submitted by the movant that [were] not attached to or expressly incorporated in a complaint, so long as [they were] integral to the complaint and there is no dispute about [their] authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). "A document is integral to the complaint if its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Faulkenberry v. U.S. Dep't of Def.*, 670 F. Supp. 3d 234, 249 (D. Md. 2023) (cleaned up).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56[,]" but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The U.S. Court of Appeals for the Fourth Circuit "has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: (1) notice and (2) a reasonable

7

opportunity for discovery." *Canty v. Corcoran*, Civ. No. GLR-18-1404, 2022 WL 899278, at *4 (D. Md. Mar. 28, 2022) (citing *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013)).

Converting a motion to dismiss to a summary judgment motion is not appropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. Du Pont de Nemours & Co. v. Kolton Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). The party opposing conversion may file a declaration pursuant to Rule 56(d) explaining the reasons why "it cannot present facts essential to justify its opposition" without discovery. Fed. R. Civ. P. 56(d); *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Yet failure to file such an affidavit is "not necessarily fatal where the 'nonmoving party has adequately informed the court that . . . more discovery is necessary.'" *Sol v. M&T Bank*, 713 F. Supp. 89, 100 (D. Md. 2024) (quoting *Harrods*, 302 F.3d at 244–45); *see also Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 693 (D. Md. 2017) (courts have "complete discretion" to deny conversion even where no Rule 56(d) affidavit has been filed). Generally, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. 5 Wright & Miller, Fed. Prac. & Proc. § 1366 (3d ed. 2004).

IV.   **DISCUSSION**

  **A. Conversion to Motion for Summary Judgment**

Defendants style their motion to dismiss alternatively as one for summary judgment and attached exhibits for the Court's consideration, thereby placing Plaintiff on notice that the motion could be disposed of under Rule 56. *See, e.g.*, *E.W. by & through T.W. v. Dolgos*, 884 F.3d 172, 178 n.2 (4th Cir. 2018) ("[Plaintiff] was on notice that the motion could be converted to one for

summary judgment because [defendants] styled it in the alternative, and [plaintiff] similarly submitted an opposition brief in the alternative."). Rule 56(d) of the Federal Rules of Civil Procedure provides that "[i]f a nonmovant shows *by affidavit or declaration that, for specified reasons*, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." (emphasis added). In response to Defendants' motion, Plaintiff articulates a need for discovery of MDSP internal policies and procedures related to hiring and the administration of polygraph examinations, internal MDSP communications related to Plaintiff, witness testimony, and expert testimony. ECF 15-2 (Pl. Opp'n) at 12–13; ECF 16-1 (Declaration of Daniel S. Crowley). Because Plaintiff asserts specific needs for discovery to respond to the evidence Defendants attach to their motion and Defendants' arguments based on that evidence, converting Defendants' motion to one for summary judgment would not be appropriate. The Court will confine its analysis of Defendants' motion to whether the allegations asserted in the Amended Complaint state plausible claims for which Plaintiff is entitled to relief.

### B. Plaintiff's Title VII Claims

In the Amended Complaint, Plaintiff alleges that Defendants engaged in discrimination based on his race, color, religion, and national origin when MDSP refused to hire him for the Quartermaster Director position in November 2018 and the Forensic Examiner position in January 2019. Defendants move to dismiss all counts of the Amended Complaint for failure to state a claim for relief.

#### 1. Applicable Law

Title VII provides a cause of action against employers who "fail or refuse to hire any

individual … because of such individual's race, color, religion … or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). This proscription is "often referred to as the 'disparate treatment' (or 'intentional discrimination') provision . . . ." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). The MFEPA is "the state law analogue of Title VII[.]" *Linton v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*, Civ. No. JKB-10-276, 2011 WL 4549177, at *4 n.3 (D. Md. Sept. 28, 2011). In similar fashion to Title VII, the MFEPA forbids employers in Maryland from "fail[ing] or refus[ing] to hire" an individual "because of . . . the individual's race, color, religion, . . . [or] national origin . . . ." Md. Code Ann., State Gov't § 20-606(a)(1)(i). Courts apply Title VII case law to MFEPA claims. *See Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (2007); *Linton*, 2011 WL 4549177, at *4 n.3.

To prevail on a claim of employment discrimination, a plaintiff may offer "direct or indirect" evidence of discriminatory or retaliatory animus under "ordinary principles of proof[,]" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997), or follow the burden-shifting framework outlined by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973); *see Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021). "Direct evidence must be evidence of conduct or statement that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (internal citation and quotation marks omitted). The plaintiff need not commit to either of the two approaches at the motion-to-dismiss stage. *Chen v. Md. Dep't of Health & Mental Hygiene*, Civ. No. ELH-15-1796, 2016 WL 4539204, at *17 (D. Md. Aug. 29, 2016).

In order to establish a prima facie case for failure to hire under Title VII, a plaintiff must demonstrate that (1) he belonged to a protected class; (2) he applied for, and was qualified for, a

10

job for which the employer was seeking applicants; (3) he was rejected despite his qualifications; and (4) after his rejection, the position remained open and the employer continued to seek similarly-qualified applicants, or filled the position with an applicant outside the protected class. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff is generally required to show that the employer took an adverse employment action against her or him "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). If a plaintiff establishes a prima facie case, a presumption of illegal discrimination or retaliation arises, and the burden of production shifts to the employer to state a legitimate, non-discriminatory reason for its adverse action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).

A plaintiff is not required to plead a *prima facie* case to state a claim of unlawful discrimination under Title VII that survives a motion to dismiss. *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584–85 (4th Cir. 2015). Even still, "a Title VII complaint is . . . subject to dismissal if it does not meet the ordinary pleadings standard under *Twombly* and *Iqbal*." *Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 747-48 (4th Cir. 2017). Therefore, a plaintiff must allege sufficient facts "to satisfy the elements of a cause of action created by [Title VII]." *McCleary-Evans*, 780 F.3d at 585. In a Title VII discrimination case, a plaintiff must plausibly allege discriminatory conduct on account of a protected status, such as race, color, national origin, or religion. *See Felder v. MGM Nat'l Harbor, LLC*, No. 20-2373, 2022 WL 2871905, at *1 (4th Cir. July 21, 2022) (per curiam). Although pleading all elements of a *prima facie* case is not strictly required, reference to the elements of a *prima facie* case may inform a court's assessment of a motion to dismiss a Title VII claim. *Yampierre v. Baltimore Police Dep't*, Civ. No. ELH-21-1209, 2022 WL 3577268, at *16 (D. Md. Aug. 18, 2022) (citations omitted).

2. Analysis

Defendants argue that Plaintiff's discrimination claims must be dismissed because Plaintiff provides no direct evidence of unlawful discrimination and cannot establish circumstances that permit an inference of unlawful discrimination. Defendants emphasize that Mr. Tanner made the challenged hiring decisions and argues that Plaintiff "offers no factual support to establish a nexus between Admin. Tanner" and Sgt. Donisi's text messages referencing Plaintiff's culture. ECF 11-1 (Def. Mem.) at 8. The Court disagrees.

Viewed in the light most favorable to Plaintiff, the Court finds the facts alleged in the Amended Complaint plead a nexus between an alleged discriminatory animus, which may reasonably be inferred from text messages Sgt. Donisi sent to Sgt. Hall, and Mr. Tanner's hiring decisions. Both the decision to rescind the conditional offer of employment as Quartermaster Director and the rejection of Plaintiff's application for the Digital Forensic Examiner position were based on the results of polygraph testing in which Sgt. Donisi was either directly or indirectly involved.

Plaintiff alleges a detailed set of facts showing that objective data collected during polygraph exams administered by Sgt. Donisi and Sgt. Hall supported passing results. Specifically, the data reflected "no significant reactions" and low probability of deception, and Plaintiff maintains that he was truthful throughout the questioning. Still, according to the Amended Complaint, Sgt. Donisi falsely claimed that the testing results were "all over the place" with respect to his questioning of Plaintiff about sex crimes, accused Plaintiff of "hiding" information, and asked offensive questions about incest and bestiality. Text messages Sgt. Donisi later exchanged with Sgt. Hal suggest that these questions were prompted by Sgt. Donisi's perception of Plaintiff's "culture" and national origin. Further, Plaintiff alleges that at times surrounding the first polygraph

exam administered by Sgt. Donisi, he covertly watched Plaintiff, which, in combination with Plaintiff's other allegations, may be reasonably inferred to reflect a generally suspicious attitude based on Plaintiff's appearance.

Sgt. Donisi's subjective and plausibly biased opinion about Plaintiff's performance on the first polygraph exam resulted in a second exam, this time administered by Sgt. Hall. During the second exam, Sgt. Hall and Sgt. Donisi exchanged text messages wherein Sgt. Donisi opined that Plaintiff "hiding something" and that "sex w[ith] juveniles is permissible" in Plaintiff's culture. Sgt. Hall accused Plaintiff of manipulating his breathing as a countermeasure to subvert the testing results, which Plaintiff denied. Ultimately, Sgt. Hall reported "no opinion" as to the testing results but that Plaintiff's breathing was atypical.

Plaintiff alleges that the reported "inconclusive" findings were false and "based on prejudiced suspicions," reflected in the exchange of text messages between Sgt. Donisi and Sgt. Hall. In the text messages, Sgt. Donisi expressed that molestation, rape, and child abduction were commonplace in "the culture and region where [Plaintiff] was born."

When rescinding the offer to hire Plaintiff as Quartermaster Director in November 2018, Mr. Tanner attributed the decision to Plaintiff's failure to pass the polygraph testing to MDSP's satisfaction. The same failure led to Mr. Tanner's determination that Plaintiff was not qualified for the Digital Forensic Examiner position in January 2019.

Defendants argue that "Sgt. Donisi's comments, while perhaps inartful, were predominantly focused on figuring out why Plaintiff could not pass his polygraph." Def. Mem. at 12. The Court does not disagree that a fact finder could ultimately interpret the text messages that way, but, on a Rule 12(b)(6) motion, the facts must be viewed in the light most favorable to Plaintiff, and reasonable inferences must be drawn in his favor. *See King*, 825 F.3d at 212; *Megaro*,

13

66 F.4th at 157. The text messages support a reasonable inference of discriminatory bias or animus based on Plaintiff's national origin and "culture," which plausibly includes consideration of his race, color, and religion.

The Court recognizes that there is no allegation of any discriminatory animus on part of Mr. Tanner, the individual responsible for the challenged hiring decisions. "In limited circumstances," however, "discriminatory intent can be imputed to the formal decision-maker 'when that official has no discriminatory animus but is influenced by previous company action that is the product of a like animus in someone else.'" *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 602 (D. Md. 2018) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011)). In *Chang Lim*, Judge Chuang summarized the "cat's paw theory of liability" recognized in *Staub* as follows:

> Under this cat's paw theory of liability, evidence that a supervisor who was not the formal decisionmaker "perform[ed] an act motivated by [discriminatory] animus that [was] *intended* by the supervisor to cause an adverse employment action" could support a finding of discrimination "if that act [was] a proximate cause of the ultimate employment action." *Staub*, 562 U.S. at 422 & n.3, 131 S.Ct. 1186 (footnote omitted). The supervisor, however, cannot merely have "substantial influence on the ultimate decision" or play a "significant" role in the decision; rather, a supervisor's discriminatory animus may support liability only if the supervisor was, in effect, "principally responsible for, or the actual decisionmaker behind, the action," such as when the formal decisionmaker simply rubberstamped the supervisor's recommendation. *See* [*Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 291(4th Cir. 2004)]; *Ousley v. McDonald*, 648 Fed. Appx. 346, 348–49 (4th Cir. 2016) . . . .

*Id*.

Here, under the facts alleged in the Amended Complaint, Mr. Tanner's hiring decisions were not only influenced, but determined, by derogatory reports of polygraph testing results produced by Sgt. Donisi and Sgt. Hall. The facts alleged in the Amended Complaint further support a reasonable inference that these reports resulted from a discriminatory animus reflected in text

messages exchanged between Sgt. Donisi and Sgt. Hall during and after Plaintiff's polygraph exams. Defendants point out that there is no allegation Mr. Tanner was a party to, or was even aware of, the text messages exchanged between Sgt. Donisi and Sgt. Hall when he made the challenged hiring decisions. But, drawing reasonable inferences in Plaintiff's favor, the text messages reflect a discriminatory animus that plausibly motivated Sgt. Donisi to make a false report of "inconclusive" polygraph results and exerted a substantial influence over Sgt. Hall doing the same. Ultimately, these officers' polygraph reports did more than substantially influence or play a significant role in the hiring decisions challenged in this case. They directly caused the decision to rescind the offer of the Quartermaster Director position and disqualified Plaintiff from being considered for the Digital Forensic Examiner position. Thus, the Court finds the foregoing facts sufficient to support liability against MDSP for the alleged discriminatory reports from Plaintiff's polygraph testing the resulted in adverse hiring decisions.

In sum, in the Amended Complaint, Plaintiff alleges enough facts to support a reasonable inference that he was denied both the Quartermaster Division and Digital Forensic Examiner positions on account of his race, color, national origin, and/or religion. Plaintiff alleges that he belonged to protected classes with respect to each of those categories, that he applied for each position and was qualified for each, that he was rejected notwithstanding his qualifications, and that each position was filled by persons outside of Plaintiff's protected statuses. As discussed above, these events occurred "under circumstances that give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253. Accordingly, Plaintiff's discrimination claims against MDSP shall not be dismissed at this stage.

The Court will, however, dismiss the official-capacity claims against the individual Defendants. It is well established that "an official-capacity suit is tantamount to a suit against the

state." *Roberts v. Coffey*, Civ. No. DKC-10-3359, 2012 WL 2000353, at *3 (D. Md. June 4, 2012) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989)). Therefore, a suit against multiple state actors in their official capacities is redundant. *Gordon v. Maryland State Police*, Civ. No. GLR-22-1699, 2023 WL 6161089, at *6 (D. Md. Sept. 21, 2023). Moreover, according to Defendants, MDSP—the actual employer subject to suit under Title VII and MFEPA—was the only respondent named in Plaintiff's EEOC charges. Def. Mem. at 7. For these reasons, Plaintiffs' claims against Sgt. Donisi, Sgt. Hall, Mr. Bachtell, and Mr. Tanner shall be dismissed.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss shall be granted in part and denied in part. Sgt. Donisi, Sgt. Hall, Mr. Bachtell, and Mr. Tanner shall be dismissed from this action. Plaintiffs' claims against MDSP shall proceed.

A separate Order will follow.

DATE: 3/31/25

_____
Matthew J. Maddox
United States District Judge